Case number 22-3312 IRS v. Howard Juntoff. Oral argument, 15 minutes per side. Mr. Duhamel for the appellant. Good morning. Good morning, Your Honor, and may it please the court. My name is Marcel Duhamel. I represent Howard Juntoff. And I would like to reserve three minutes of my time for rebuttal. Sure. The bankruptcy court got it right. Unfortunately, the BAP then got it wrong. This court should reverse the decision of the BAP and reinstate the judgment of the bankruptcy court. The shared responsibility payment is not a tax within the meaning of the bankruptcy code. We know that under Howard delivery, the question has to be construed tightly. And any doubts about whether the SRP functions as a tax versus something else should be resolved in favor of not finding priority. In other words, not finding that it's a tax. The Sebelius court asked two questions and both are relevant to this case. The first question was whether or not the SRP could be construed in such a way as to preserve its constitutionality. And the court answered that question by saying, yes, the SRP was an enactment within congressional constitutional authority as an exercise of its taxing power. But that doesn't mean the SRP is a tax for all purposes, because we also know from Sebelius that the SRP is not a tax with respect to the Anti-Injunction Act. What the court did is made it clear that when it construes a statute, it looks to the meaning of the statute in construing the term. And it recognizes that the same word can have different meanings in different statutory contexts. What's your what's your strongest argument that the SRP is not a tax? The strongest argument, Your Honor, is that it arises liability for it arises only upon default of a statutory obligation. This court in Suburban 2 essentially announced that rule. It distinguished between workers' compensation premiums, which were a tax in Suburban 1, and an obligation to reimburse the state for payments made to injured employees in Suburban 2. In Suburban 2, that liability was not a tax because it arose only when the taxpayer defaulted on the statutory obligation to maintain workers' compensation insurance. What this court said in Suburban 2 is that a tax must be universally applicable. And we know from Suburban 2 that universal applicability has to mean the obligation arises for everyone who is similarly situated, not merely those who fail to conform to some statutory obligation. So of the Suburban 2 factors, are the only one you're saying that this one doesn't meet is the universally applicable factor? That's the primary one, Your Honor. Yes, there isn't a hypothetical creditor here that we can measure the SRP against. The one that is not met is the universality factor. And that's an important factor. This court, both in Suburban 1 and in Suburban 2, reiterated the fact that this circuit may very well be standing alone on this issue. But this decision was announced in the 1990s. Speaking of standing alone, isn't that what you want us to do in this case in disagreeing with the Third and Fourth Circuits? Well, Your Honor, with respect to the Third and Fourth Circuits, they either completely ignored Suburban 2 or they expressly said that they don't follow it. This court has been critical expressly of the Fourth Circuit's approach to this question. So it does, you know, these multi-factor tests, I got to tell you, some of the inquiries in the multi-factor tests are downright silly. And, you know, I'm happy to repeat things that people have said before, but they're pretty silly. Like did the government do it, for example? Well, yeah, I think so. So I want to go back to where you started. Why isn't there a difference? I mean, first of all, I really appreciate the point you're making about NFIB dealing with tax in two different ways. So it's not as if I don't understand the point. I have some familiarity with that litigation. But why isn't there – if you're stuck picking which ruling to follow, right, the Anti-Injunction Act ruling or the constitutional avoidance ruling, okay, where you're kind of stuck. They're the superior court. We're the inferior court. Why wouldn't the constitutional ruling be the better path to follow, which is what I take the third and fourth to have done? And here's – I want to be a little more specific about it because I'm not sure this is how they set it. The Anti-Injunction Act is a – you know, it's a gatekeeping rule. It says when the federal courts can do something when they can't. It may be that they give it a different meaning for that. But why – the question is what does this word mean in the bankruptcy setting? And it seems to me the translation is a little stronger saying what they said the mandate is. And then in bankruptcy, we know the mandate, the word tax. There it is. So I guess my instinct is to say that we are – we're better off as an inferior court saying, okay, they had this anti-injunction ruling, but that was a gatekeeping ruling. Once you're through the gate, kind of all bets are off as shown by the fact they treated the word differently. We're not in a gatekeeping setting. We're in a setting of what to do with this language and this concept, the individual mandate, because it is the amount of money the government is trying to collect grows out of the exact – that system, not out of the anti-injunction system. So tell me what I'm missing in thinking about it that way. I think, Your Honor, it's a question of standard of review in essence or standard of construction, I should say. In Sebelius, the court was self-consciously not reaching the most natural reading of the statute. The court says so. What the court was doing was looking for any rational reading of the statute that would preserve its constitutionality. I quite agree with that. But you might say that happens in rule of lenity, for example, or that happens in clear statement cases involving the 11th Amendment. Once the court deploys the canon, for better or worse, there's plenty of reason one could disagree with that. But once they deploy it, the statute is not a chameleon. We're kind of stuck with it. Again, Your Honor, I think it's always a question of context and what the court is actually being asked. They are separate questions. And I think, consistent with CF and I, this court would have to conclude that the SRP is not a tax, just like the exactment in CF and I, which is a Supreme Court case, was also not a tax under the Bankruptcy Code. And the reason it wasn't a tax is for the same reason the reimbursement obligation in Suburban 2 wasn't taxed, because that exactment arose only as a result of the taxpayer's default on a statutory obligation to pay into a pension plan. Wouldn't – maybe this is the genius of what you're doing. If we decided it was a penalty for these purposes, wouldn't you then, your client, be able to come in and say, voila, it's unconstitutional? Oh, I don't think so at all, Your Honor. Not at all. Why not? Because the Supreme Court has said, for purposes of a constitutional analysis, we can construe it as falling within Congress's taxing power. But that doesn't answer the question of whether or not, in the context of the priority scheme laid out in the Bankruptcy Code… Maybe I'm wrong or maybe you're not getting my point. If the only way it's legitimate is as a tax, we either follow it through as a tax or we say it's illegitimate. When we're talking about this exact payment, I'm not talking about the word tax in CFI or some other scheme. I'm talking about the one that grew out of the ACA. I mean that is one statute, and once we say it's a tax, it's constitutional, the minute we say it's not, why isn't it automatically unconstitutional? They said Congress has no power to do this under the Commerce Clause. It was only that it's a taxing-powered law that they could do it. Doesn't that almost force our hand? I don't believe so, Your Honor, for precisely the same reason that same court said, look, whether it is a tax depends on context. We know it's a penalty under the ACA. That's what gave them authority to look at the issue, and once they have that authority, they're now doing the thing the Anti-Injunction Act sometimes prohibits. Sometimes it doesn't let federal courts handle these matters, but once they got through the gatekeeping, now you're there and you're allowed to look at things like what does it mean and is it valid? Obviously, the first thing they did was, was it valid? They said no, if it's a penalty, not under Commerce Clause, and then saved it. We'll agree with an aggressive construction, but that's the only way it's legit. This goes away. This whole problem of owing a couple hundred bucks goes away if it was illegitimate. We would all agree with that, right? Sure, Your Honor, but I don't think that what the Supreme Court was suggesting is that if the SRP is a tax for constitutional purposes, it is therefore a tax for all purposes, even under the Bankruptcy Code. In assessing whether or not it functions predominantly… I quite agree with you. The words penalty, we're not going to across the board call them taxes because of this ruling. What I am trying to figure out is why we wouldn't do that all the time. The individual mandate tax penalty comes up anywhere because that was the key point of the case. Is it valid or not? And they said no under Commerce, i.e. no as a penalty, yes under taxing, i.e. yes as a tax, and at least for the universe of cases from that, I find myself really struggling with why I would have authority to give it a different characterization, which potentially makes it invalid. Why would it be valid in the bankruptcy setting? Well, Your Honor, at that point, it would be valid in the bankruptcy setting because there is a difference between asking within the context of the Bankruptcy Code priority scheme. Is the SRP functioning predominantly as a tax or predominantly as a penalty? That's one question, and that's the question before the court. But you never get to that. If it's not a valid debt, case over. You're the one with the taxpayer as a client. You have to agree with me. You don't sit there and worry about paying invalid debts. Absolutely, Your Honor. If Sebelius had come out with the SRP being declared a penalty for all purposes, then we wouldn't be here today. But the Sebelius decision does not foreclose the possibility that this payment can be within congressional taxing authority, yet still not function as a tax in the context of the priority scheme. And that's the question that's before the court. And I do see these as two distinct analytical questions. Well, you definitely have judges that have agreed with you. So I'm just because I'm raising skeptical questions doesn't mean there's not an argument to be made. Why don't am I right that your initial time is run? Unfortunately, you are correct, Your Honor. But I was doing a little. It was a little me focus. Let me make sure Judge Davis and Judge Mathis don't have questions right now. Judge Davis, do you have any questions right now? I do, but I think it can actually wait till rebuttal. Okay. And Judge Mathis, did you have anything you wanted to raise now? Not at this point. Okay. All right. All right. We'll hear from the government. Ms. Wicks. Thank you, Your Honor. May it please the court. I'm Marie Wicks with the U.S. Department of Justice Tax Division, and I represent the Internal Revenue Service in this case. The shared responsibility payment looks like a tax, acts like a tax, is paid like a tax, and it is entitled to priority in bankruptcy either under Section 507A.8.A as a tax measured by income or under Section 507A.8.E as an excise tax on a transaction. One of the three of us about 10 years ago thought it was a penalty, making almost identical arguments that Mr. Dunham was making. Yes, Your Honor. Don't you think you'd lose this case without the NFIB decision? No, Your Honor. The shared responsibility payment likewise fits the CF&I authority for tax priority in bankruptcy and also fits all six of the Lorber suburban factors, which are part of this court's precedent. The Third Circuit in Sysoporsky found that it fit all six Lorber suburban factors, and the Fourth Circuit in Alesha applied a functional analysis as well and determined that under its circuit precedent, the shared responsibility payment operates as a tax. Go ahead. Go ahead. What about Mr. Dunham's argument that it's not universally applicable? Your Honor, the shared responsibility payment is universally applicable as the BAP analyzed in its thorough decision below. It is applied to all non-exempt, uninsured individuals that are identifiable as a class under the statute 5000A. Doesn't it have quite a few other carve outs, not just anyone who's subject to 5000A? For instance, doesn't it have exceptions for hardship and a couple of other reasons as to why someone might not be subject to it? Yes, Your Honor. It does have those exceptions. Those do not push it outside of the universally applicable prong, because as Suburban 2 stated, part of the reasoning behind the universally applicable prong is that the benefit inures to the general public welfare as opposed to a discrete benefit to the payor. So here the shared responsibility payment inures to the general public welfare and that it is paid into the treasury. And also the whole structure of the 5000A shared responsibility payment was to incentivize individuals to purchase health insurance, which in turn inured to the general welfare as well, because the more people who have health insurance, qualified insurance coverage, the lower the premiums would go and it would limit the cost shifting of providing health care to uninsured individuals from governments and health care providers. So the universally applicable prong here is met because it is universally applied to similarly situated individuals, namely those who do not fall within any of the exemptions and who opt to pay the shared responsibility payment rather than obtain qualified insurance coverage. It applies to all of those individuals equally. And the Fourth Circuit in New Neighborhoods noted that just because a tax doesn't apply outside of a defined class does not mean that it's not generally applicable to those within the class. The Supreme Court in FIB, we believe, if not controlling, is highly persuasive to the finding that the shared responsibility payment is a tax for bankruptcy purposes. Shouldn't we give some credit to the label? I realize the label is not dispositive. I realize there's a functional analysis, but, you know, it's not as if the label is not politically salient. I mean, the word tax is a very big deal for an elected official. I mean, it's just a big deal that people pay a lot of attention to increasing taxes or decreasing taxes. So they obviously made the decision not to use that word. I mean, you don't have to tell me that that's not dispositive. I get it. But it isn't pretty darn important. Your Honor, part of the entire functional analysis in the bankruptcy context looks beyond the label. That's from day one, the Anderson case from 1906, the firing case from 1941. None of us can prove this point, but I'm just going to guess if I look at every time the word penalty is used in the last hundred years, it's not found to be a tax that often in the bankruptcy code. I know it has happened. It can happen. But I'm guessing it's like 9-1. Nine times no, one time yes. That's going to be my guess, because why wouldn't we pay attention to labels? I'm sure the label does not matter against the weight of the characteristics, the practical characteristics of the shared responsibility payment. It's imposed by the government under its taxing power. It's paid by individuals along with their federal income tax return paid into the Treasury. It's not owed by those who don't file income tax returns because they don't make enough income to be required to file the return. It's not punitive in nature. And that was an important part of the Supreme Court's analysis in FIB. The amount can never be higher than the cost of obtaining health insurance. And in most cases, it's actually much lower than that. So contrary to the tax that was found to be a penalty in CF&I, the punitive nature of the shared responsibility payment is minimal if it exists at all. Rather, it's a tax that an individual can pay instead of obtaining qualified insurance coverage. So regardless of Congress's label that it gave the shared responsibility payment in the statute, which the court said was dispositive for the purpose of the Anti-Injunction Act, that doesn't matter in the bankruptcy context, just as it doesn't matter in the constitutional analysis as well. If we said the payment was a penalty today, would that make it unconstitutional? Your Honor, it would seem contrary to the Supreme Court's decision in FIB, which applied a functional analysis that is the same functional analysis that is applied in the bankruptcy context. In fact, the court cited CF&I and Sotelo specifically as a case that confirms this functional approach. And applying that functional analysis, the court concluded that the shared responsibility payment functions as a tax. So in that regard, it would be contrary to the Supreme Court's conclusion in FIB. In addition, the shared responsibility payment satisfies the plain language of 507A8A as a tax measured by income. This is even under the Howard delivery type construction of priority provisions in bankruptcy. And notably in Howard delivery, the court acknowledged that it is common. Why is it measured by income in light of what you said just a few minutes ago, that it doesn't fluctuate that much? It's measured by income. The amount of the shared responsibility payment under 5000A subsection C is based on the individual's income. So determining the amount of the payment requires that an individual include their income in the equation to calculate. But isn't it a pretty narrow band? In other words, it's not like most income taxes, which started zero and go long. This is a very narrow band, doesn't it? It is. I mean, it's capped by the cost of obtaining health insurance, so it can never be higher than that. But that doesn't mean it's not measured by income. It's the calculation depends upon the input of the taxpayer's income. And so that that. Is consistent with the plain language of subsection A, which notably is not limited to only income taxes. That is where the bankruptcy courts analysis resulted in a too narrow interpretation of subsection A that basically results in only income taxes being included. But the language itself says. Income taxes on or measured by income, so the measured by is given weight here. And as the Supreme, as the Third Circuit stated in Sisiporsky, the shared responsibility payment fits comfortably in subsection A as a tax measured by income. And if this court agrees with the Third Circuit and the Fourth Circuit that it is entitled to priority as a tax measured by income under 507 A8A, the court's analysis can stop there. It doesn't need to go any farther because that entitles the tax. Did you make an alternative argument about it being an excise tax and I'm remembering this correctly? Yes, Your Honor. That is the alternative or additional grounds for affirmance that the shared responsibility payment is an excise tax. When I saw that argument in the context of a case in which two courts of appeals have already gone the way you're asking us to go. I thought to myself, hmm, is the government nervous here? Is the government not sure that the courts have picked the right place to locate this? Are you nervous? Do you think excise tax is the superior route? No, Your Honor. It's an alternative grounds for affirmance. Which is the superior route from the IRS's perspective? We believe that the shared responsibility payment does fit clearly within the language of a tax measured by income. The excise tax definition in the Sixth Circuit, especially under Rizzo, is a broad definition, which we believe encompasses all indirect taxes, including the shared responsibility payment. And in turn, the transaction element of subsection E operates to set a temporal limit on the ability of the tax to be a priority tax in bankruptcy. So the transaction is not a substantively limiting factor, but rather it sets the timeframe here. And the Supreme Court in NFIB did say that the point of the shared responsibility payment is that it is triggered by a specific set of circumstances. Earning enough income, but not obtaining health insurance. So the transaction here would be earning enough income, not obtaining health insurance. And a return is required. So that would set the timeframe for the excise tax priority provision. So that's an alternative basis for affirmance. But if the court agrees with the Third and Fourth Circuits that the shared responsibility payment is measured by income and therefore entitled to priority under subsection A, the court can stop its analysis there. Are there any limits to measure by income? I mean, is it just as long as that's one reference point satisfied? Or is there more that should be expected in dealing with that language? Your Honor, this court doesn't need to draw a line on what constitutes measured by income. There's a hypothetical exaction that is somehow relevant to income, but it's not actually measured by it. Here, the shared responsibility payment, the equation itself under subsection C of 5000A requires the input of an individual's income. This is for the flat rate amount or the percentage of income amount, as was the case with Mr. Juntoff here. So it's literally measured by income. So this is not the sort of case where the court needs to hypothesize about the any limiting factors on the measured by income amount. Because the Supreme Court applied a functional analysis in NFIB and concluded that the shared responsibility payment is a tax, and because under this court's precedent, the shared responsibility payment is a tax, and because the tax fits within subsection A as a tax measured by income, or alternatively under subsection E as an excise tax on a transaction, we ask that this court affirm the VAPS judgment and hold that the shared responsibility payment is entitled to priority in bankruptcy. Thank you, Ms. Wicks. Mr. Duhamel, you've got some rebuttal. Your Honor, the SRP, whatever it is, is not measured by income. Imagine three individuals. One earns $150,000. One earns $150 million. One earns $150 billion. All three pay exactly the same amount, which is measured on the average cost of a bronze insurance plan. Is that a fair example? Yeah, go ahead, Judge. I just want to question your example, because, of course, you've given examples of three incomes that are all above the ceiling. But there are folks who fall well below the floor and folks who are somewhere between the floor and the ceiling. So it doesn't seem to me fair to say that, hey, this isn't a real thing measured by income, because if you have differences, true differences in income, you're going to fall in different places, aren't you? Not exactly. Here's what I mean. Here's an example. Let me make an analogy. Ohio has a property tax and a homestead exemption. The property tax is measured by the value of your property. Mr. Duhamel, you can go down this road if this is how you want to use your rebuttal. But the point Judge Davis is getting at is they cap the payment at the cost of insurance, therefore making it utterly irrelevant whether you earn $100 million, $300 billion, or $1 trillion. Right? It's capped. Going below in the other direction, that's the point of her question. In the other direction, income does matter. You have to tell us why a cap means the language measured by income doesn't matter anymore. That's your call how to do that, but you're not doing it with the example you're using. Fair enough, Your Honor. Well, here's why. Income is used only as a basis to reduce the amount of the SRP. Never as an amount, never as a basis on which to increase it. And it's one of only a number of factors. Wait, why is that true? If you're at the level where you pay no payment and you then have enough income to pay some payment, I don't understand what you just said. Well, Your Honor, what sets the payment initially is the cost of an insurance plan. And then if your income is below a certain level, it can reduce your liability. You can just as easily characterize this as it starts at zero, and if you make enough money, it goes up to a cap. Why is that? I don't feel like that's playing games. That seems just as legitimate as your way of thinking about it. I think, Your Honor, if the cap were based on income, that would be different. Right? For instance, if the SRP were 2% of your income, if you are liable for it, subject to downward deduction, then that would be a tax measured by income. Instead, the SRP is based on the average cost of a premium, the average cost of an insurance plan, subject to downward deduction. I'm not suggesting that income is irrelevant. What I'm suggesting is that income is used only as a downward departure. Do you have a case for this exact point? In other words, that if what's going on is they set the cost of the payment and then use income to lower it, but not to increase, that makes it not measured by income. Is there a case that said that? Not directly. The closest I can come is a bankruptcy decision, OPM leasing.  That was a case that involved a tax on capital subject to adjustments based on gross receipts. And what the court held there was, look, this is a tax on capital. It's measured by capital. The fact that your gross receipts can be used to calculate the downward reduction doesn't make this a tax measured by income. It's not a tax measured by your gross receipts. It's measured by capital in the first instance. And the fact that we means test it doesn't mean it's measured by income. I'd also point out, I think Judge Niemeyer was on the right path in his dissent in the Alicia case. As this court noted, the word penalty does mean something when it appears in the statute. Absolutely, under CF and I, it's not dispositive. But the fact that Congress chose to use the word penalty in this context, when in the same statute it demonstrated it knows how to use the word tax when it wants to, has to have some weight. That's at least a clue as to what Congress thought it was doing when it imposed the SRP. What's the unlawful act or omission if we're under the argument that it's a penalty? What's the unlawful act? Well, the unlawful act is failure to purchase health insurance. Now, bear in mind, whether or not that's considered criminal or lawless isn't really the point. Under this court's ruling in Suburban 2, the point is that this exactment arises only when an individual fails to perform a statutory duty. The failure to purchase health insurance is a failure to comply with the statute. And that's what triggers the liability in the first instance. So when asking the question, does this look more like a penalty or more like a tax? The answer is its penalty characteristics predominate over its tax characteristics. That's not to say it's the same force as a criminal proceeding, but it looks much more like the penalty in Suburban 2 than it does the tax in Suburban 1. And what's your last response to this idea of treating this payment the same for constitutional purposes and bankruptcy purposes and any other purposes in which the mandate would have applied, at least while it was still good law? You don't have to tell us about the Anti-Injunction Act. We kind of have worked through that. I guess I just have this default in my head that… I would say… Go ahead. I'd say this, Your Honor. Even the Fourth Circuit and the Third Circuit didn't think that Sebelius was dispositive of the question. Neither of those courts said, well, this case is over. Sebelius came down. There's nothing to talk about. Well, that's exactly what Judge Wilkinson said. That was his whole separate concurrence. Correct. Enough is enough. That was a concurrence. But the court's decision carefully pointed out that there was a distinction in the analysis and that it wasn't a foregone conclusion that merely because Congress had the constitutional power to enact the SRP that the SRP necessarily functions as a tax for purposes of this tight construction, which the Supreme Court also said has to be applied in priority cases. This is a priority case functionally, and that's the real question. How do we construe this priority provision of the bankruptcy code? That must be construed tightly. And if there are any doubts at all, any doubts whatsoever, they have to be resolved in favor of finding no priority. So to the extent to which, for instance, the Fourth Circuit or the Third Circuit said, gee, this is a close question, that should have been dispositive of the issue under Howard Delivery. If it's close, the debtor wins. Mr. Duhamel, I think you're pretty well over, and I want to make sure we don't have other questions, though. Judge Davis, do you have any other questions? None for me. Judge Mathis, do you have any other questions? No questions. Okay. Thank you, Mr. Duhamel, for your argument, for your briefs. Ms. Wicks, the ACA lives on, huh? It's amazing, but really helpful to have great counsel. So we really appreciate your answering our questions and your super thoughtful briefs. Thank you very much. The case will be submitted.